[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was initiated by complaint dated July 31, 1995 and returnable to court on August 22, 1995.[1] It is a claim to quiet title based upon a claim of adverse possession. The initial complaint was brought against the defendant, Robert A. Scalise, d/b/a Rapspar Enterprises, Ltd. (hereinafter "Rapspar"). Robert Scalise (hereinafter "Scalise") appeared by counsel on April 24, 1996. Following Scalise's claim that he was not the owner of the premises involved in this action, the defendant Rapspar was cited in as a defendant by order of Stengel, J. on November 12, 1996 with service of process on November 20, 1996. Rapspar appeared by counsel on February 25, 1997. Attorney James Scalise who had entered his appearance for Robert A. Scalise on April 24, 1996, was allegedly replaced by the law firm of Ericson, Scalise, Mangin, and Zembko on November 6, 1997 for the defendant Rapspar
and on September 1, 1998 Attorney Salvatore Vitrano filed an appearance in lieu of Ericson, Scalise, Mangin, and Zembko forRapspar. Since James Scalise never withdrew his appearance for Robert Scalise, said Robert Scalise remains as a defendant in this case. The significance of that is based upon plaintiff's Exhibit 21 which is a warranty deed from Rapspar to Robert A. Scalise dated January 21, 1997 which would indicate that he is the present owner of the subject premises. Accordingly, the order of this court in this matter will involve both Rapspar and Robert A. Scalise.[2]
The parties agreed to submit post-trial briefs within six weeks of the completion of the transcript, which would have been approximately December 11, 1998. They were not submitted, and by letter dated December 22, 1998 and received on or about December 29, 1998 both counsel jointly waived further briefs and asked the court to render a decision.
Trial was held before this court on September 10, 11, 15 and 16, 1998. CT Page 760
The first witness for the plaintiff was Wilson Alford, Jr. He is a civil engineer, a professional engineer and a land surveyor and was qualified as same as an expert witness by this court. He submitted a property survey or map identified as Plaintiff's Exhibit 1 and entitled "PROPERTY SURVEY PREPARED FOR MICHAEL B. GUARCO, 112 NOTCH ROAD, GRANBY, CONN." and dated September 9, 1998. The court finds from the totality of the evidence, including deeds, maps and testimony, that the plaintiff Michael B. Guarco, is presently the owner of 112 Notch Road, Granby, Connecticut. Mr. Alford testified that the area owned by the plaintiff at 112 Notch Road is the area outlined in lavender or purple on said map. However, he admitted that according to a survey completed by Kratzert, Jones Associates, Inc., who was retained by the defendant, Rapspar, 112 Notch Road is the area bounded by a blue line which starts at the northwest corner of said premises at the same northwest corner identified by Mr. Alford as the starting point of the property he claimed the plaintiff owns but, according to the Kratzert, Jones survey, the property of the plaintiff is bounded by a blue line which commences at said northwest corner and travels S 63° 25' 47" E 200.00' to a point in the northeast corner of 112 Notch Road just northwesterly of a mark on said map identified as "EXIST. HUB/TK" which point is also marked by a lavender or purple line placed on there over a circle by Mr. Alford. According to Kratzert Jones, 112 Notch Road then is further bounded by a blue line as shown on the map running from said point S 07° 39' 23" E 170.01' to another point which is at the northeasterly boundary of land now or formerly of Robert J. Cronin, Jr. and Donna K. Cronin which point is again marked by a short lavender or purple line over a circle. Then, according to the Kratzert Jones survey the plaintiff's boundary line then moves from that point along a blue line N 63° 02' 34" W a distance of 200.00' to Notch Road which is the same point as the southwesterly corner of the lot previously described by Mr. Alford as the land owned by the plaintiff. According to the Kraztert and Jones map which is referenced by Mr. Alford, the plaintiff's westerly boundary is Notch Road from the aforementioned point running N 07° 54' 55" W to the northwest corner of said premises a distance of 168.90'. There is no dispute between the parties as to the westerly boundary being Notch Road at that angle and distance. Each party, the plaintiff and Rapspar, claim their property as indicated, the defendant Rapspar based upon blue lines as shown in the Kratzert and Jones map which have been included in plaintiff's Exhibit 1, and the plaintiff based upon the lavender/purple line as described by Mr. Alford. Therefore, it is clear that the disputed CT Page 761 area between the parties is the area between the outer boundary as described by Mr. Alford by the lavender/purple lines and the blue boundary lines as just described on the Kratzert Jones survey. This area will hereafter be referenced as the "disputed area". The parties agree that this is the disputed area. The plaintiff is claiming title to said disputed area by adverse possession. The plaintiff seeks the following:
"1. Money damages;
 2. An Order of the Court quieting title pursuant to C.G.S. § 47-31 in the defendant in said property acquired by the plaintiff through adverse possession;
 3. A permanent injunction prohibiting the defendant, RAPSPAR Enterprises, Ltd., and its transforee, Robert Scalise, its agents, servants or employees from entering upon said property or injuring any buildings, trees, fixtures or other property of the plaintiff's;
 4. Treble damages pursuant to C.G.S. § 52-560 for the value of all trees, timber or shrubbery removed by the defendant, RAPSPAR Enterprises, Ltd., and its transforee, Robert Scalise, its agents, servants or employees from said property of the plaintiff;
 5. Any other relief, legal or equitable, which the Court deems appropriate.
 6. The Court declare a prescriptive easement over all or a portion of the premises described in Paragraph 2 pursuant to Connecticut General Statutes § 47-37, et seq."
 STANDARD OF PROOF
The parties agree, and the court finds that in order to sustain a claim of adverse possession, the plaintiff must prove that the defendant, owner, and his predecessors in title were ousted of possession and kept out uninterruptedly for a period of fifteen years by an open, visible and exclusive possession by the adverse possessor, without the license or consent of the owner and that the plaintiff must prove that the open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse possession of the disputed area for the requisite period of time was under a claim of right.[3] Further, the area of adverse CT Page 762 possession must be defined with reasonable certainty. Further, the court finds that the burden upon the plaintiff is to prove his case by clear and convincing evidence and that the plaintiff may not rely upon inference in his efforts to prove the elements of his claim of adverse possession.[4]
This court's decision is based primarily upon the testimony of the plaintiff. The court found him to be honest, reliable, candid and trustworthy based upon his demeanor on the witness stand, the manner in which he answered questions, his memory or lack thereof, the consistency of his testimony and in particular, his knowledge and observations of the property. The court finds that the plaintiff lived at 85 Notch Road which was across the street and to the west of 112 Notch Road from 1932 until approximately 1960 when he moved to a residence at 115 Notch Road which had recently been constructed. This was across from 112 Notch Road and adjacent to 85 Notch Road. He lived at 115 Notch Road from approximately 1960 until 1989. The plaintiff was one year old in 1932 and as a young boy played on the premises now known as 112 Notch Road. He purchased 112 Notch Road in 1962 and rented it out to tenants from then to the date of this trial. The court was and is impressed with his thorough knowledge and familiarity with the area. He was a close observer of the activities there and on the surrounding properties.
The plaintiff testified that the area on plaintiff's Exhibit 1, which is the property survey dated September 9, 1998 aforementioned, outlined or bounded in green is the area in which he or his tenants mowed the grass from at least 1962 when the plaintiff purchased the premises known as 112 Notch Road until at least 1995. The plaintiff further testified that the area northerly of the green line to the lavender or purple line which runs along the northerly and/or northeasterly boundary of the disputed area running northwesterly from where the METAL SHED was located on April 12, 1995 as shown on said map to the intersection of said boundary line with Notch Road was also grass that was mowed by the plaintiff and/or his tenants from 1962 to 1995 when that area was excavated for a drainage or detention basin to accommodate the property northerly of the disputed area known as lot 17. He further testified that the rectangular area outlined in green which includes the location of the WELL HOUSE on said map was at various times between 1962 and 1995 used as a garden by various tenants. When it was not being used as a garden, it was in the area which was mowed between 1962 and 1995. CT Page 763
Accordingly, the court finds, by clear and convincing evidence not based upon inferences, as follows:
 (1) As to the area outlined or bounded with a green line or lines on said map as well as the area northerly of the green line to the northerly and/or northeasterly boundary line of the disputed area from northeasterly of the METAL SHED to the intersection with Notch Road, and the rectangular area just mentioned, that everyone, including the defendants and their predecessors in title, but except the plaintiff acting by himself or by his tenants, were ousted of possession of the aforementioned disputed areas outlined in green and just described; and that everyone
except the plaintiff acting by himself or by his tenants were kept out of said areas uninterruptedly for a period of more than 15 years by open, visible and exclusive possession by the plaintiff without the license or consent of the alleged owner of said disputed area, the latter being the defendants and their predecessors in title who are and were the owners of lots 17 and 16 on said map and the claimed owners of the disputed area. This adverse possession by the plaintiff was open, notorious, uninterrupted, continuous, undisputed, peaceable for more than fifteen (15) years under a claim of right by the plaintiff.
The court accepts plaintiff's testimony as clear and convincing proof of the above including his testimony that at least between the period of 1962 and 1995 no one has given him license or consent to utilize said disputed area as described and that he possessed same under a claim of right by his open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse position of said disputed area as aforementioned. The court further finds that based upon the clear and convincing evidence presented by the plaintiff, no one else other than himself or his tenants ever came on to and used the aforementioned disputed area.
(2) There was a four foot high wire fence on the northerly boundary of the disputed area from the WOODEN SHED as shown on said map running southeasterly to a point three feet southeasterly of what is shown on said map as "END OF FEN". Said fence was there for a period of time at least between 1962 and 1995 and, therefore, the defendants and their predecessors in title were ousted of CT Page 764 possession of the disputed area described as being the location of the fence and the premises southerly of same to a point shown as EXIST.HUB/TK bounded southeasterly by a line from 3 feet southeasterly of END OF FEN southeasterly point to the point shown as EXIST.HUB/TK, hereafter "area 2", and that the plaintiff possessed same under a claim of right by his open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse possession of said fence and area to the south thereof for more than fifteen years continuously without the license or consent of the alleged owner thereof, the latter being the defendants and their predecessors in title.
Therefore, the court concludes that the fence and area south of said fence as it was from 1962 to 1995, as described as area 2 is an area to which the plaintiff is entitled by adverse possession.
 (3) The court accepts the plaintiff's testimony that there was a clothesline from the corner of the residence at 112 Notch Road from a hook where there is presently a hanging plant thereon to a tree just southerly of the northeasterly corner of the disputed area shown as a "12 INCH DEAD TREE WITH CHICKEN WIRE FENCE THROUGH CENTER AND CLOTHESLINE REEL ATTACHED TO TREE" as shown on plaintiff's Exhibit 7. From 1962 when the plaintiff purchased the premises until the mid-eighties when a new clothesline was installed as shown on said map, the tenants of 112 Notch Road continuously used said clothesline from the house to the tree. Said use ousted the alleged owner of possession, the alleged owner being the defendants and their predecessors in title, uninterruptedly for a period of more than fifteen years by open, visible and exclusive possession by the plaintiff without the license or consent of the alleged owners as aforesaid. The plaintiff possessed same under a claim of right by his open, notorious, uninterrupted, continuously, undisputed, peaceable adverse possession for more than fifteen years under a claim of right by the plaintiff.
(4) The court also accepts the plaintiff's testimony that the disputed area that was mowed between 1962 and 1995 was two to three feet easterly of the tree line which is on the CT Page 765 easterly border or boundary shown in green on plaintiff's Exhibit 1. Therefore, the court finds that the area described in paragraph one above bounded on the east by the green line as shown on said map is bounded by the easterly side of said line which is three feet beyond the present tree line to the east.
Accordingly, the court finds by clear and convincing evidence without the use of inferences that the plaintiff is entitled to and does have title to the premises above described by adverse possession and orders that the defendants provide an A-2 property survey at their expense within thirty (30) days hereof showing the boundary of such areas of adverse possession as the court has described same. Upon submission to the court, and upon the court's approval, these areas will be designated as the areas of adverse possession with title in the plaintiff.
The court will enter judgment in favor of the plaintiff on counts one and four as well as the injunction requested, but based upon the evidence produced at trial, the court will find for the defendants on counts two, three and five. The court will grant the following in plaintiff's prayer for relief: paragraphs 2 and 3.
Rittenband, J.